# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| STEPHEN BUSHANSKY, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>PATHEON N.V., PAUL S. LEVY, JAMES C. MULLEN, DANIEL AGROSKIN, PHILIP EYKERMAN, WILLIAM B. HAYES, STEPHAN B. TANDA, HUGH C. WELSH, HANS PETER HASLER, PAMELA DALEY, JEFFREY P. MCMULLEN, GARY P. PISANO, and, CHARLES COGUT,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is a class action brought on behalf of the public stockholders of Patheon N.V. ("Patheon" or the "Company") against Patheon and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9") and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Patheon will be acquired by Thermo Fisher Scientific Inc.

("Thermo Fisher") through its wholly-owned subsidiary Thermo Fisher (CN) Luxembourg S.à r.l. ("Purchaser") (the "Proposed Transaction").

2.      On May 15, 2017, Patheon and Thermo Fisher issued a joint press release announcing that they had entered into a Purchase Agreement (the "Merger Agreement") dated May 15, 2017 to sell Patheon to Thermo Fisher.  Under the terms of the Merger Agreement, Thermo Fisher will acquire all outstanding shares of Patheon for $35.00 in cash per share of Patheon's common stock (the "Offer Price").  Pursuant to the Merger Agreement, Thermo Fisher, through Purchaser, commenced the Tender Offer on May 31, 2017. The Tender Offer is scheduled to expire at 9:00 a.m., New York City time on August 10, 2017.  The Proposed Transaction is valued at approximately $7.2 billion, including the assumption of approximately $2.0 billion of net debt.

3.      On May 31, 2017, Patheon filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement, which recommends that Patheon stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Patheon's financial projections, relied upon by Patheon's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in connection with rendering its fairness opinion; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley; and (iii) Patheon insiders' and Morgan Stanley's potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Patheon stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction.

4.     In short, the Proposed Transaction will unlawfully divest Patheon's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders.    To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the transaction and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Patheon.

9.     Defendant Patheon is a Netherlands corporation and maintains its principal executive offices at Evert van de Beekstraat 104, 1118 CN, Amsterdam Schiphol, The Netherlands.  Patheon's common stock is traded on the New York Stock Exchange under the ticker symbol "PTHN."

10.    Defendant Paul S. Levy ("Levy") has been Chairman of the Board since March 2016 and previously served as a director of the Company from 2007 to 2014.

11.    Defendant James C. Mullen ("Mullen") has been Chief Executive Officer ("CEO") and a director of the Company since February 2011.

12.    Defendant Daniel Agroskin ("Agroskin") has been a director of the Company since 2009.

13.    Defendant Philip Eykerman ("Eykerman") has been a director of the Company since March 2014.

14.    Defendant William B. Hayes ("Hayes") has been a director of the Company since March 2016.

15.    Defendant Stephan B. Tanda ("Tanda") has been a director of the Company since March 2016.

16.    Defendant Hugh C. Welsh ("Welsh") has been a director of the Company since March 2014.

17.    Defendant Hans Peter Hasler ("Hasler") has been a director of the Company since March 2016.

18.    Defendant Pamela Daley ("Daley") has been a director of the Company since March 2016.

19.    Defendant Jeffrey P. McMullen ("McMullen") has been a director of the Company since March 2016.

20.    Defendant Gary P. Pisano ("Pisano") has been a director of the Company since March 2016.

21.    Defendant Charles Cogut ("Cogut") has been a director of the Company since March 2017.

22.    The defendants identified in paragraphs 10 through 21 are collectively referred to herein as the "Individual Defendants" or the "Board."

## OTHER RELEVANT ENTITIES

23.    Thermo Fisher is a Delaware corporation and maintains its principal executive offices at 168 Third Avenue, Waltham, Massachusetts 02451.  Its common stock is traded on the New York Stock Exchange under the symbol "TMO."

24.    Purchaser is a private limited liability company organized under the laws of the Grand Duchy of Luxembourg and wholly owned subsidiary of Thermo Fisher.

## CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Patheon common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

26.    Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

27.    The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of May 12, 2017, there were 145,136,214 shares of Company common stock issued and outstanding.  All members of the Class may be identified from records maintained by Patheon or

its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

28.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 14(e) of the Exchange Act;

(c)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(d)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

29.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

31.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Company Background and Strong Financial Outlook**

32.     Patheon is a global provider of outsourced pharmaceutical development and manufacturing services. The Company provides a comprehensive, integrated and customizable range of active pharmaceutical ingredient ("API") and finished drug product services to its customers, from formulation development to clinical and commercial-scale manufacturing, packaging and life cycle management. Through Patheon's end-to-end integrated service offering, Patheon provides customers with comprehensive solutions for small and large molecule biological pharmaceuticals across three main segments: (i) development and manufacturing services for API; (ii) formulation development, and pre-clinical and clinical drug product manufacturing; and (iii) commercial drug product manufacturing and packaging. On July 26, 2016, Patheon completed its initial public offering of 34,226,191 shares at a public offering price of $21.00 per share.

33.     On June 8, 2017, the Company issued a press release announcing its second quarter 2017 financial results. For the quarter, revenue was $483 million, compared to $469 million in the second quarter of 2016. Revenue for the first six months of fiscal 2017 was $941 million, compared to $875 million for the first six months of fiscal 2016. Adjusted EBITDA for the first six months of fiscal 2017 was $177 million, compared to $157 million for the first six months of fiscal 2016. Despite defendant Mullen commenting that "[d]uring the second quarter we continued to build momentum with customers and make strategic investments to support our long-term growth outlook," he and the other Board members caused Patheon to enter into the Merger Agreement with Thermo Fisher.

**The Process Leading Up to the Proposed Transaction**

34.     On December 2, 2016, a company referred to in the Recommendation Statement as "Party A" contacted defendant Mullen to express interest in acquiring Patheon. Following

Board discussion, defendant Mullen informed Party A that the Company was not interested in a sale transaction at that time.

35.     On January 4, 2017, Patheon received a nonbinding proposal from Party A to acquire Patheon at a proposed range of $34.00 to $37.00 per share in cash. Following discussion at a January 17, 2017 Board meeting, defendant Mullen informed Party A that the Company was pursuing its existing business plan and not considering a sale at that time. Party A subsequently withdrew its offer and requested to be notified if Patheon elected to pursue strategic alternatives in the future.

36.     On February 28, 2017, Marc Casper ("Casper"), President and CEO of Thermo Fisher, met defendant Mullen for dinner and discussed the companies' respective businesses and operations, as well as Thermo Fisher's interest in discussing an acquisition of the Company.

37.     On March 24, 2017, Thermo Fisher submitted a preliminary offer to acquire Patheon at a price of $33.00 per share in cash.

38.     Following a March 30, 2017 Board meeting, the Board suggested that Thermo Fisher submit a revised proposal. Defendant Agroskin contacted Party A to inquire whether it remained interested in acquiring Patheon, and Party A confirmed it was.

39.     On April 3, 2017, Thermo Fisher submitted a revised proposal to acquire the Company for $33.00 to $36.00 per share in cash.

40.     On April 19, 2017, Party A submitted a revised proposal to acquire the Company for $36.00 to $38.00 per share in cash.

41.     On May 9, 2017, Thermo Fisher submitted a revised proposal to acquire Patheon for $34.00 per share in cash. The next morning, Party A informed Morgan Stanley that it would not be in a position to submit a final proposal to acquire Patheon until May 16, 2017, but was

confident that Party A's proposal would be at a price above the range indicated in Party A's April 19th proposal.

42.     On May 12, 2017, Party A informed Morgan Stanley that it would not be in a position to submit an acquisition proposal in the near future and would not likely be able to submit a proposal in the future.  That same morning, Casper advised defendant Mullen that Thermo Fisher may be willing to offer up to $35.00 per share in cash, subject to resolving material open issues in the draft merger agreement and executing a transaction prior to opening of the U.S. stock markets on May 15, 2017.

43.     Over the next two days, the parties and their advisors negotiated the remaining terms of the transaction documents based on a $35.00 per share transaction.  During the evening of May 14, 2017, Morgan Stanley rendered its fairness opinion and the Board approved the Merger Agreement.

44.     The next day, prior to opening of the U.S. trading markets, the parties executed the Merger Agreement and related transaction documents.

**The Proposed Transaction**

45.     On May 15, 2017, Patheon and Thermo Fisher issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> WALTHAM, Mass. and DURHAM, N.C., (May 15, 2017) – Thermo Fisher Scientific Inc. (NYSE: TMO), the world leader in serving science, and Patheon N.V. (NYSE: PTHN), a leading global provider of high-quality drug development and delivery solutions to the pharmaceutical and biopharma sectors, today announced that their boards of directors have approved Thermo Fisher's acquisition of Patheon. Thermo Fisher will commence a tender offer to acquire all of the issued and outstanding shares of Patheon for $35.00 per share in cash. The transaction represents a purchase price of approximately $7.2 billion, which includes the assumption of approximately $2.0 billion of net debt.

\* \* \*

"Patheon's development and manufacturing capabilities are an excellent complement to our industry-leading offering for the biopharma market," said Marc N. Casper, president and chief executive officer of Thermo Fisher Scientific. "Our combined capabilities will enhance our unique value proposition for these customers, create significant value for our shareholders and further accelerate our company's growth."

James C. Mullen, chief executive officer of Patheon, said, "Over the past several years, we have increased our capabilities to become a leading CDMO provider in a highly fragmented market. We are confident that our combined offerings and Thermo Fisher's proven track record of disciplined M&A and successful integrations will take our business to the next level."

Casper added, "We look forward to welcoming our new colleagues from Patheon to Thermo Fisher. Patheon's commitment to quality and service excellence is directly aligned with our focus on helping our biopharma customers accelerate innovation and drive productivity."

**Insiders' Interests in the Proposed Transaction**

46.     Thermo Fisher and Patheon insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Patheon.

47.     Notably, it appears that members of Company management have secured positions for themselves following completion of the Proposed Transaction.  For example, in Patheon and Thermo Fisher's May 15, 2017 joint press release, Thermo Fisher President and CEO Casper stated, "We look forward to welcoming our new colleagues from Patheon to Thermo Fisher."

48.     Moreover, Company insiders stand to reap a substantial financial windfall for securing the deal with Thermo Fisher.  Notably, pursuant to the Merger Agreement, each outstanding Company restricted stock unit held by a non-employee director and each performance stock unit, whether vested or unvested, will be converted into the right to

receive cash payments.  The following table summarizes the cash payments the executive officers and directors stand to receive in connection with their restricted stock unit awards and performance share unit awards:

| | Aggregate No. of Restricted Stock Units (#)(1) | Resulting Consideration ($)(2) | Aggregate No. of Performance Stock Units (#)(3) | Resulting Consideration ($)(2) | Total Resulting Consideration ($)(4) |
|---|---|---|---|---|---|
| **Executive Officers** | | | | | |
| James C. Mullen | — | — | 462,177 | $ 16,176,195 | $ 16,176,195 |
| Michel Lagarde | — | — | — | — | — |
| Rebecca Holland New | — | — | 82,329 | $ 2,881,515 | $ 2,881,515 |
| Michael J. Lehmann | — | — | 97,736 | $ 3,420,760 | $ 3,420,760 |
| Lukas Utiger | — | — | 97,736 | $ 3,420,760 | $ 3,420,760 |
| Stuart Grant | — | — | 100,137 | $ 3,504,795 | $ 3,504,795 |
| Eric Sherbet | — | — | 111,780 | $ 3,912,300 | $ 3,912,300 |
| Craig E. Schneier | — | — | — | — | — |
| Harry R. Gill, III | — | — | 53,920 | $ 1,887,200 | $ 1,887,200 |
| Francisco Negron | — | — | 133,181 | $ 4,661,335 | $ 4,661,335 |
| Raul Cardona Torres | — | — | — | — | — |
| Michael E. Lytton (5) | — | — | 115,792 | $ 4,052,720 | $ 4,052,720 |
| **Directors** | | | | | |
| Paul S. Levy | — | — | — | — | — |
| Daniel Agroskin | — | — | — | — | — |
| Stephan B. Tanda | 4,659 | $ 163,065 | — | — | $ 163,065 |
| Hugh C. Welsh | — | — | — | — | — |
| Philip Eykerman | — | — | — | — | — |
| William B. Hayes | 6,229 | $ 218,015 | — | — | $ 218,015 |
| Hans Peter Hasler | 7,126 | $ 249,410 | — | — | $ 249,410 |
| Charles Cogut | 4,061 | $ 142,135 | — | — | $ 142,135 |
| Pamela Daley | 7,102 | $ 248,570 | — | — | $ 248,570 |
| Jeffrey P. McMullen | 6,229 | $ 218,015 | — | — | $ 218,015 |
| Gary P. Pisano | 6,229 | $ 218,015 | — | — | $ 218,015 |
| James Unsworth (6) | — | — | — | — | — |
| Ralf Schmeitz (6) | — | — | — | — | — |
| **TOTAL** | 41,635 | $ 1,457,225 | 1,254,788 | $ 43,917,580 | $ 45,172,374 |

### The Recommendation Statement Contains Material Misstatements or Omissions

49.     The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Patheon's stockholders.  The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in connection with the Tender Offer.

50.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Patheon's financial projections, relied upon by Patheon's financial advisor Morgan Stanley in connection with rendering its fairness opinion; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley; and (iii) Patheon insiders' and Morgan Stanley's potential conflicts of interest. Accordingly, Patheon stockholders are being asked to make a decision whether to tender their shares in connection with the Tender Offer without all material information at their disposal.

***Material Omissions Concerning Patheon's Financial Projections***

51.     The Recommendation Statement fails to disclose material information relating to the Company's financial projections relied upon by Morgan Stanley for its analyses.

52.     For example, with respect to the Patheon management projections, the Recommendation Statement discloses projections for various non-GAAP metrics including Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to GAAP. The omission of the aforementioned line item projections renders the non-GAAP projections included in the Recommendation Statement materially misleading and incomplete.

53.     The importance of reconciling between GAAP and non-GAAP financial measures has long been widely acknowledged. The SEC adopted "Regulation G" in 2003, in response to the mandate set forth in Section 401(b) of the Sarbanes-Oxley Act that rules be enacted to regulate the use of pro forma financial information. Regulation G prohibits the use of non-GAAP financial measures outside of SEC filings unless they are

accompanied by the most directly comparable GAAP accounting measure, as well as a reconciliation of the two. Such reconciliations were deemed necessary to address the proliferation of non-GAAP financial measures lacking a uniform definition and therefore carrying the risk of misleading investors.

54.    In addition, the Recommendation Statement omits the Company's management projections for the following items: income (loss) from continuing operations before repositioning expenses (including certain product returns and inventory write-offs recorded in gross profit), interest expense, foreign exchange losses reclassified from other comprehensive income (loss), refinancing expenses, acquisition and integration costs (including certain product returns and inventory write-offs recorded in gross profit), gains and losses on sale of capital assets, Biologics earnout income and expense, income taxes, impairment charges, remediation costs, depreciation and amortization, stock-based compensation expense, consulting costs related to our operational initiatives, purchase accounting adjustments, acquisition-related litigation expenses and other income and expenses.

55.    In addition, according to the Recommendation Statement, on January 17, 2017, Patheon management reviewed with the Board its "outlook and business plan for Patheon on a standalone basis, *both excluding and including* certain proposed acquisition opportunities that Patheon was pursuing at such time." Recommendation Statement at 21. However, the Recommendation Statement fails to disclose (i) whether the standalone projections provided to Morgan Stanley for use in its fairness opinion included or excluded certain proposed acquisition opportunities; (ii) an alternative set of projections either including or excluding projections; and (iii) when the management projections that were provided to Morgan Stanley for use in connection with the valuation analysis underlying its fairness opinion were created.

56.     The omission of this information renders the statements in the "Certain Patheon Management Projections" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Morgan Stanley's Financial Analyses***

57.     The Recommendation Statement describes Morgan Stanley's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Morgan Stanley's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to tender their shares in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Patheon's stockholders.

58.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the Company's unlevered free cash flows calculated by Morgan Stanley for Patheon; (ii) the range of terminal values for Patheon; (iii) the inputs used to derive the range of discount rates of 7.7% to 8.9%; (iv) Morgan Stanley's basis for using an assumed perpetual growth rate range of 2.5% to 3.5%; and (v) Morgan Stanley's basis for performing the sensitivity analysis.

59.     With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Recommendation Statement fails to disclose: (i) the inputs used to derive the range of discount rates of 9.8% to 11.7%; (ii) Patheon's next twelve months EBITDA as of October 31, 2018; and (iii) Patheon's projected net debt as of October 31, 2018.

60.    With respect to Morgan Stanley's *Public Trading Comparable Companies Analysis*, the Recommendation Statement fails to disclose the individual multiples for each of the selected public companies analyzed by Morgan Stanley, as well as the financial performance metrics for each selected company.

61.    With respect to Morgan Stanley's *Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the individual multiples for each of the selected transactions analyzed by Morgan Stanley, as well as any benchmarking analyses Morgan Stanley performed for Patheon in relation to the target companies.

62.    The omission of this information renders the statements in the "Opinion of Patheon's Financial Advisor" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

### *Material Omissions Concerning Potential Conflicts of Interest*

28.    The Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by Patheon management and the Board.

29.    The Recommendation Statement sets forth, in part, that "Thermo Fisher and Purchaser have engaged in discussions with certain executive officers of Patheon with respect to potential compensation arrangements to be effective following the Offer Closing, but no definitive agreements or arrangements have been entered into as of the date of this Schedule 14D-9 between Thermo Fisher or Purchaser and any such executive officers." Recommendation Statement at 17. In addition, in the Company's May 15, 2017 press release announcing the Merger Agreement, Thermo Fisher President and CEO Casper was quoted as stating, "[w]e look forward to welcoming our new colleagues from Patheon to Thermo Fisher." However, the Recommendation Statement completely fails to set forth all of the employment related

discussions and negotiations that occurred between Thermo Fisher and Patheon executive officers. The Recommendation Statement further fails to disclose whether any of Thermo Fisher's prior proposals or indications of interest mentioned management retention or the potential for Board members to sit on the combined company's board of directors.

30.    Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

31.    The Recommendation Statement also fails to disclose material information concerning Morgan Stanley's potential conflicts of interest.

32.    For example, the Recommendation Statement fails to disclose Morgan Stanley's holdings in Thermo Fisher's and its affiliates' stock. In addition, the Recommendation Statement fails to disclose the nature of the past services provided to Patheon, Thermo Fisher, and their affiliates.

33.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

34.    The omission of this information renders the statements in the "Arrangements with Current Executive Officers, Directors and Affiliates of Patheon," "Background of the Purchase Agreement" and "Opinion of Patheon's Financial Advisor" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

35.    Defendants' failure to provide Patheon stockholders with the foregoing material information constitutes a violation of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act, and SEC Rule 14d-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to tender their shares in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Class Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9

63.    Plaintiff repeats all previous allegations as if set forth in full.

64.    Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Patheon stockholders to tender their shares in the Tender Offer.

65.    Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

66.    The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

67.    Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while defendants

undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

68.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision whether to tender their shares if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Class Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

69.     Plaintiff repeats all previous allegations as if set forth in full.

70.     Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

71.     Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer.

72.    As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

## COUNT III

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

73.    Plaintiff repeats all previous allegations as if set forth in full.

74.    The Individual Defendants acted as controlling persons of Patheon within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Patheon and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

75.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

76.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the

Proposed Transaction. They were, thus, directly involved in the making of this document.

77.    In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

78.    By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Patheon, and against defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

//

//

//

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  June 22, 2017

WEISSLAW LLP

By

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*